UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 07-CV-3865 (JFB) (ARL)

———————————

RHASHAUN BEEKS,

Plaintiff,

VERSUS

SHERIFF EDWARD REILLY, NASSAU COUNTY JAIL MEDICAL, AND KIM EDWARDS, R.N.,

Defendants.

———————————

MEMORANDUM AND ORDER
August 21, 2008

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff *pro se* Rhashaun Beeks ("plaintiff" or "Beeks") brought this action pursuant to 42 U.S.C. § 1983 and New York State tort law against defendants Sheriff Edward Reilly ("Reilly"), Nassau Health Care Corporation ("NHCC")[1], and Kim Edwards, R.N. ("Edwards") (collectively, "defendants"), arising out of an injury plaintiff allegedly sustained on August 30, 2007, when he was incarcerated at the Nassau County Correctional Center. Defendants now move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, defendants' motions are denied with respect to Beeks's federal claims. However, the motions are granted with respect to plaintiff's claims under New York State law.

I. FACTS

The following facts are taken from the complaint and are not findings of fact by the Court. The Court assumes these facts to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party.

Beeks's complaint alleges the following:

> On or about August 30th of 2007 I was walking on the 2nd Tier of K2F Block the floor was slippery and I slipped and fell against the wall, back first It was object sticking out from the wall (metal) The object on

---

[1] The caption of plaintiff's complaint refers to NHCC as "Nassau County Jail Medical."

the wall stuck in my back and caused immediate pain. It left a gash and a scar about 12 inches on my back that made discoloration. Nassau Medical Center hasn't given me a xray or anything. Kim Edward RN didn't order for me to see about my back Sheriff Rielly [sic] has allowed these metal objects to remain sticking out the wall and hasn't made any effort to correct the hazard problem.

(Compl. at 4.)[2]

## II. PROCEDURAL HISTORY

Beeks filed the complaint in this action on September 14, 2007. On December 18, 2007, Reilly submitted his answer, as did NHCC and Edwards, jointly. Reilly filed an amended answer on December 19, 2007, and his motion for judgment on the pleadings on January 24, 2007. NHCC and Edwards submitted their joint motion for judgment on the pleadings on February 25, 2008. Plaintiff responded to both motions on March 24, 2008. By letters dated April 4, 2008 and May 5, 2008, respectively, Reilly and NHCC/Edwards notified the Court that they did not wish to submit reply briefs.[3]

## III. STANDARD OF REVIEW

Courts evaluate a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) under the same standard as a motion pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *Nicholas v. Goord*, 430 F.3d 652, 658 n.8 (2d Cir. 2005).

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic*, 127 S. Ct. at 1974. The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.*

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant*, "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally. . .

---

[2] Moreover, Beeks stated in his opposition to the instant motion: "Both verbal and sick call reports were repeatedly put forth and no action was ever taken denying medical treatment to Mr. Beeks. . . . a gash and now serious scar of 12 inches identifies both the injury and it [sic] <u>significant seriousness</u>." (Pl.'s Opp. at 1.)

[3] Reilly also asked the Court to disregard Beeks's opposition on the grounds that plaintiff "relies upon bald and conclusory allegations which lack any support." (Letter dated April 4, 2008, at 1.) As a threshold matter, Reilly has failed to set forth any such support for his assertion that the Court should disregard plaintiff's submission. In any event, in the exercise of its discretion, the Court has fully considered all of the submissions made by the parties.

2

. . This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings. . . . This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated. Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant*, No. 06-1590-cv, 2008 U.S. App. LEXIS 17113, at *15-*16 (2d Cir. Aug. 12, 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (holding that when plaintiff is appearing *pro se*, the Court shall "'construe [his complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'") (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)); *accord Sharpe v. Conole*, 386 F.3d 483, 484 (2d Cir. 2004).

Finally, in connection with a motion to dismiss under Rule 12(b)(6), the Court may only consider "the facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis*, 421 F.3d at 100; *accord Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). Here, plaintiff did not append any documents to his complaint or incorporate any such documents by reference therein and, thus, the Court confines its review to the face of the complaint.

IV. DISCUSSION

A. Section 1983 Claims

To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Here, pursuant to Section 1983, plaintiff claims that his Eighth Amendment rights[4] were violated when (1) Reilly allegedly "allowed these metal objects to remain sticking out the wall and hasn't made any effort to correct the hazard problem," leading to Beeks's injury; and (2) NHCC and Edwards allegedly did not adequately address Beeks's medical needs arising out of this injury. As set forth below, the Court denies defendants' motions to dismiss these claims.

(1) Deliberate Indifference Claim Against Reilly

As stated *supra*, Beeks claims that Reilly personally violated plaintiff's Eighth Amendment rights as follows: "Sheriff Rielly [sic] has allowed these metal objects to remain sticking out the wall and hasn't made any effort to correct the hazard problem." As the Court further stated *supra*, plaintiff alleges that, as a result of Reilly's conduct, a metal object lodged in plaintiff's back, causing a "gash" and scar of approximately twelve inches in length.

---

[4] The Court is aware that "Eighth Amendment claims are only available to plaintiffs who have been convicted of a crime," *Hill v. Nieves*, No. 06 Civ. 8213, 2008 U.S. Dist. LEXIS 25911, at *15 (Mar. 31, 2008), and the complaint does not state whether Beeks was convicted of a crime at the time of the incident in question. However, as courts routinely recognize, "[t]he rubric for evaluating deliberate indifference claims is the same under the Eighth and Fourteenth Amendments." *Id.* Thus, as defendants suggest, the Court applies the standard for Eighth Amendment deliberate indifference claims to evaluate Beeks's complaint.

Reilly now moves to dismiss Beeks's claim on the grounds that plaintiff fails to state a claim for "deliberate indifference" as a matter of law. For the reasons set forth below – after accepting all of the allegations in the complaint as true and construing the complaint liberally and in the light most favorable to plaintiff – the Court rejects Reilly's argument.

a. Legal Standard

As the Second Circuit has explained,

> [t]he Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. Moreover, under 42 U.S.C. § 1983, prison officials are liable for harm incurred by an inmate if the officials acted with 'deliberate indifference' to the safety of the inmate. However, to state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice."

*Hayes v. N.Y. City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) (citations and quotation marks omitted); *see also Graham v. Poole*, 476 F. Supp. 2d 257, 259-60 (W.D.N.Y. 2007) ("For purposes of Eighth Amendment claims, the Supreme Court has drawn a 'distinction between mere negligence and wanton conduct . . . .'") (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). Thus, according to the Second Circuit,

> Defendants may be held liable under § 1983 if they . . . exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights under the Constitution. Deliberate indifference is found in the Eighth Amendment context when a prison supervisor knows of and disregards an excessive risk to inmate health or safety. . . . Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.

*Ortiz v. Goord*, No. 06-4622-pr, 2008 U.S. App. LEXIS 9655, at *2 (2d Cir. May 5, 2008) (citations and quotation marks omitted); *see also Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) ("Deliberate indifference will exist when an official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *Curry v. Kerik*, 163 F. Supp. 2d 232, 237 (S.D.N.Y. 2001) ("'[A]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'") (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted).

In particular, the Second Circuit has set forth a two-part test for determining whether a

prison officials actions or omissions rise to the level of deliberate indifference:

> The test for deliberate indifference is twofold. First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent. The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry. Specifically, a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.

*Hayes*, 84 F.3d at 620; *see also Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002) (setting forth two-part test articulated in *Hayes*).

b. Application

Here, after liberally reviewing the complaint, accepting all its allegations as true, and construing them in the light most favorable to plaintiff, the Court declines to conclude as a matter of law that Beeks has failed to state a claim for deliberate indifference against Reilly. In essence, Beeks alleges that Reilly knew of a metal object protruding from the wall that was capable of causing – and, indeed, allegedly did cause – a painful, foot-long gash in plaintiff's back. Under these circumstances, the Court declines to conclude as a matter of law at this juncture that Reilly did not know of the protruding metal object or that he would have

acted reasonably in knowingly failing to fix a condition that allegedly posed a substantial risk of serious harm. *See Phelps*, 308 F.3d at 186-87 (reversing district court's dismissal of deliberate indifference claim at motion to dismiss stage because "[h]owever unlikely it may appear to a court from a plaintiff's complaint that he will ultimately be able to prove an alleged fact such as mental state, the Court may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference"); *Curry*, 163 F. Supp. 2d at 237 ("Although plaintiff asserted in his opposition to defendants' motion to dismiss that defendants acted negligently, the substance of his claim is that defendants failed to repair the shower in Unit 2-B for over nine months, despite the fact that they were alerted to the conditions in the shower area several times, and their failure to make these requested repairs led to his injury. These assertions, if true, would support a finding of deliberate indifference.").[5]

---

[5] Further, to the extent plaintiff was a pretrial detainee (as NHCC and Edwards suggest in their moving papers (*see* Motion of NHCC and Edwards at 2)), the Second Circuit may mandate an even more lenient standard to analyze plaintiff's claim than the Court employed on the instant motion. In particular, the Second Circuit has explained that, "in a challenge by pretrial detainees asserting a *protracted* failure to provide safe prison conditions, the deliberate indifference standard does not require the detainees to show anything more than actual or imminent substantial harm." *Benjamin v. Fraser*, 343 F.3d 35, 51 (2d Cir. 2003) (emphasis in original). For the same reasons discussed *supra* pursuant to the stricter standard, the Court cannot determine as a matter of law at this juncture whether Reilly neglected the hazard in question for a lengthy time period despite the alleged risk of substantial, imminent harm and demonstrated

5

### (2) Deliberate Medical Indifference Claim Against NHCC and Edwards

As described *supra*, Beeks alleges that NHCC and Edwards violated his Eighth Amendment rights when – after a metal object lodged in plaintiff's back, causing pain and a twelve-inch gash and scar – NHCC failed to provide Beeks with an x-ray "or anything" and Edwards failed to "order for [Beeks] to see about [his] back." NHCC and Edwards now move to dismiss the claims against them on the grounds that plaintiff has failed to state a claim for "deliberate medical indifference" as a matter of law. For the reasons set forth below, after liberally reviewing the complaint, accepting all of its allegations as true, and construing them in the light most favorable to plaintiff, the Court rejects the argument of NHCC and Edwards.

#### a. Legal Standard

As the Second Circuit has explained, "[d]eliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as made applicable to the states through the Fourteenth Amendment." *Bellotto v. County of Orange*, No. 06-1185-pr, 2007 U.S. App. LEXIS 19848, at *7 (2d Cir. Aug. 21, 2007). In particular, the Second Circuit has held that, similar to the deliberate indifference claim lodged against Reilly,

> To establish an Eighth Amendment claim for medical indifference, [a plaintiff] must prove that defendants were deliberately indifferent to a serious medical need. To satisfy this standard, [a plaintiff] must prove both objective and subjective elements. Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists. Subjectively, the charged official must act with a sufficiently culpable state of mind.

*Fox v. Fischer*, No. 05-4440-pr, 2007 U.S. App. LEXIS 17316, at *1-*2 (2d Cir. July 20, 2007) (citations and quotation marks omitted).

Specifically, in *Salahuddin v. Goord*, the Second Circuit clarified the requirements of these two elements of a medical indifference claim. 467 F.3d 263 (2d Cir. 2006); *see also, e.g., Jones v. Westchester County Dep't of Corrections Medical Dep't*, No. 07 Civ. 3019, 2008 U.S. Dist. LEXIS 38128, at *8-*9 (S.D.N.Y. May 6, 2008) (applying *Salahuddin* test to medical indifference claim). In particular, with respect to the first, objective element, the Second Circuit explained:

> The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious. Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Determining whether a deprivation is an objectively serious deprivation entails two

---

reckless indifference to that condition. Thus, to the extent that plaintiff is a pre-trial detainee, his claim against Reilly also survives a motion to dismiss.

inquiries. The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable care. Thus, prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause, and, conversely, failing to take reasonable measures in response to a medical condition can lead to liability.

Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner. For example, if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious. Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain. In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone. Thus, although we sometimes speak of a serious medical condition as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

467 F.3d at 279-80 (citations and quotation marks omitted); *see also Jones*, 2008 U.S. Dist. LEXIS 38128, at *8 ("Initially, the Court must determine whether the inmate was actually denied adequate care. Prison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is reasonable. Second, if the care provided was unreasonable, courts must inquire as to whether that inadequacy was sufficiently serious. . . . This analysis requires an examination both of the harm already caused to the prisoner and the likelihood that harm will continue or increase without additional treatment. Thus, the seriousness inquiry will vary based on the nature of the treatment provided and the claim asserted by the inmate.") (citations and quotation marks omitted).

With respect to the second, subjective component, the Second Circuit further explained:

> The second requirement for an Eighth Amendment violation is subjective: the charged official must act with a sufficiently culpable state of mind. In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health. Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result. Although less blameworthy than harmful action taken intentionally and knowingly, action taken with reckless indifference is no less actionable. The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices. But recklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent.

*Salahuddin*, 467 F.3d at 280 (citations and quotation marks omitted); *see also Jones*, 2008 U.S. Dist. LEXIS 38128, at *9-*10 ("The second component is subjective, and requires that the prison official involved act with s sufficiently culpable state of mind. This is satisfied by a showing that the official acted with deliberate indifference toward Plaintiff's health, a state of mind akin to criminal recklessness. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result.") (citations and quotation marks omitted).

b. Application

Here, the Court has liberally construed Beeks's complaint – taking all of its allegations as true and construing them in the light most favorable to plaintiff – and, for the reasons set forth below, declines to conclude at this juncture as a matter of law that he has failed to state a claim for deliberate medical indifference against Edwards and NHCC.

In particular, the Court declines to conclude at the motion to dismiss stage, as a matter of law, that Beeks's injury was not serious enough to warrant a greater degree of medical care than he received or that Edwards and NHCC did not act recklessly by allegedly failing to provide this greater degree of care. Specifically, as stated *supra*, Beeks has alleged that a metal object "stuck in [his] back" and caused "immediate pain." Plaintiff further alleges that the metal object "left a gash" and a scar of approximately twelve inches on his back, as a well as "discoloration." With respect to the alleged medical treatment he received (or did not receive), Beeks states that NHCC "hasn't given [him] an xray or anything" and that Edwards "didn't order for me to see about my back." In essence, the complaint alleges that NHCC and Edwards provided Beeks with little or no medical care

8

after a metal object lodged in plaintiff's back, causing a gash and a foot-long scar. As the Second Circuit has explicitly observed, a "prisoner who nicks himself shaving obviously does not have a constitutional right to cosmetic surgery. But if prison officials deliberately ignore the fact that a prisoner has a five-inch gash on his cheek that is becoming infected, the failure to provide appropriate treatment might well violate the Eighth Amendment." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Under the circumstances of this case, therefore, the Court declines to conclude as a matter of law at the motion to dismiss stage that plaintiff's alleged foot-long gash did not warrant a greater degree of medical care than he allegedly received or that Edwards and NHCC did not act recklessly by failing to provide Beeks with such a higher degree of care. *See Chance*, 143 F.3d at 703-04 (reversing district court's dismissal of medical indifference claim at 12(b)(6) stage because "[w]hether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case. . . . It may be that Chance has no proof whatsoever of this improper motive, and that lack of proof may become apparent at summary judgment. But even if we think it highly unlikely that Chance will be able to prove his allegations, that fact does not justify dismissal for failure to state a claim, for Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations. . . .") (citations and quotation marks omitted); *Jones*, 2008 U.S. Dist. LEXIS 38128, at *15-*16 ("Whatever the ultimate merits of Plaintiff's claim, Defendants have jumped the gun by filing a pre-answer motion to dismiss. Many of the material questions in this case, such as, 'What care is reasonable in these circumstances,' and 'What was the Defendants' mental state when the surgery was refused,' are not ripe for adjudication on the basis of the complaint and its appended materials. It may become clear, at summary judgment or at some later stage in the litigation, that these claims are not adequately supported. But at the 12(b)(6) stage, we must accept the plaintiff's allegations as true.") (citation and quotation marks omitted); *Ahart v. Willingham*, No. 3:05CV1016, 2007 U.S. Dist. LEXIS 19040, at *11-*12 (D. Conn. Mar. 15, 2007) (denying motion to dismiss medical indifference claim where plaintiff allegedly complained to prison officials of blurry vision and headaches and defendants allegedly failed to diagnose and treat plaintiff's glaucoma); *see generally Odom v. Kerns*, No. 99-CV-10668, 2008 U.S. Dist. LEXIS 47336, at *23 (S.D.N.Y. June 18, 2008) (denying summary judgment to defendants on medical indifference claims where plaintiff alleged "scrapes and cuts" that "could have (and did) become infected," even though "there is no evidence that the cuts would inhibit Plaintiff's daily activities or that he would be in chronic pain").

### (3) Qualified Immunity

Defendants also argue that they are entitled to dismissal on the grounds of qualified immunity. As set forth below, the Court concludes that the complaint does not provide a sufficient basis at this juncture for the Court to determine whether defendants are entitled to qualified immunity. The motions to dismiss on such grounds, therefore, are denied without prejudice to renewal at the summary judgment stage.

#### a. Legal Standard

According to the Second Circuit, government actors may be shielded from liability for civil damages if their "conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did

9

not violate plaintiff's rights." *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003); *see also Fielding*, 2007 U.S. App. LEXIS 28939, at *4 ("The police officers, in turn, are protected by qualified immunity if their actions do not violate clearly established law, or it was objectively reasonable for them to believe that their actions did not violate the law."). As the Second Circuit has also noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (quotation marks omitted)). Thus, as with absolute immunity, qualified immunity is not merely a defense, but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Forsyth*, 472 U.S. at 526. Accordingly, as with absolute immunity, courts should determine the availability of qualified immunity "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Further, the Second Circuit has emphasized that "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *see also McCray*, 2007 U.S. Dist. LEXIS 90875, at *66 ("A defendant asserting a qualified immunity defense at the 12(b)(6) stage . . . faces a formidable hurdle. . . . Because the evidence supporting a finding of qualified immunity is normally adduced during the discovery process and at trial, the defense of qualified immunity [usually] cannot support the grant of a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim upon which relief can be granted.") (citations and quotation marks omitted). In particular, the facts supporting the defense must be clear from the face of the complaint. In addition, in such situations, "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.*

b. Application

Here, after liberally reviewing the complaint, accepting all of its allegations as true, and construing them in Beeks's favor, the Court declines to conclude as a matter of law that defendants are entitled to qualified immunity at the motion to dismiss stage. In essence, Beeks alleges that Reilly knew of hazard capable of create a foot long gash in an inmate's back and did not rectify the situation. Further, plaintiff alleges that, after he received such an injury, NHCC and Edwards knowingly failed to provide Reilly with adequate, if any, medical care. Under these circumstances, the Court cannot determine as a matter of law at this juncture that defendants were objectively reasonable in believing that they were not violating plaintiff's clearly established rights. Defendants' motions to dismiss the complaint on qualified immunity grounds, therefore, are denied without prejudice to defendants' raising this defense at the summary judgment stage. *See McKenna*, 386 F.3d at 437-38 (affirming district court's denial of qualified immunity at motion to dismiss stage on deliberate indifference claim, "[h]owever the matter may stand at the summary judgment stage, or perhaps at trial. . . ."); *Jones*, 2008 U.S. Dist. LEXIS 38128, at *17 (denying motion to dismiss deliberate medical indifference claim because plaintiff "adequately alleges facts that, if believed, state a section 1983 violation"); *Estate of Ryan Rodriguez v. Simon*, No. 2:06-CV-125, 2007 U.S. Dist. LEXIS 55982, at *26-*27 (D. Vt. Mar. 30, 2007), *adopted in full*, 2007 U.S. Dist. LEXIS 52411 (D. Vt. July 19,

10

2007) (denying motion to dismiss deliberate medical indifference claim on qualified immunity grounds because "the facts in support of that defense do not appear on the face of the Amended Complaint for any of the three defendants here. The qualified immunity defenses of these officials would benefit from discovery to flesh out more thoroughly the circumstances and motivations of their conduct.").

B. State Law Claims

To the extent that Beeks brings unspecified claims under New York State tort law (presumably, for negligence), the Court agrees with defendants that these claims fail because plaintiff failed to file a notice of claim in compliance with New York State General Municipal Law § 50-e.

Under New York General Municipal Law § 50(e)(1)(a), a plaintiff must file a notice of claim against a county or its employees within ninety days after such claim arises. New York County Law § 52 (citing N.Y. Gen. Mun. Law § 50(e)). Moreover, pursuant to Section 50-i, a plaintiff must plead in the complaint that: (1) the notice of claim was served; (2) at least thirty days has elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time, the defendant has neglected to or refused to adjust or to satisfy the claim. *See Henneberger v. County of Nassau*, 465 F. Supp. 2d 176, 198 (E.D.N.Y. 2006) (citing *Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006)). The plaintiff bears the burden of demonstrating compliance with the notice of claim requirement. *Id.* (citing *Horvath*, 423 F. Supp. 2d at 423, and *Rattner v. Planning Comm'n of Vill. of Pleasantville*, 156 A.D.2d 521, 548 N.Y.S.2d 943 (N.Y. App. Div. 1989)). Here, plaintiff failed to mention any Notice of Claim in the complaint and does not appear to respond in his opposition papers to defendants' motions to dismiss his state law claims on this ground.

"Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999) (internal quotations and citations omitted); see *Horvath*, 423 F. Supp. 2d at 423 ("Absent a showing of such a Notice of Claim, the complaint may be dismissed for failure to state a cause of action.") (internal quotation omitted). Accordingly, for the state law claims asserted in this case, "[t]he failure to file a notice of claim is fatal unless the action has been brought in the public interest, such as a class action brought to protect civil rights, or a court has granted leave to serve late notice." *Pustilnik v. Hynes*, No. 99 Civ. 4087 (JG), 2000 U.S. Dist. LEXIS 8718, at *6 (E.D.N.Y. June 27, 2000) (citing *Mills v. Monroe County*, 59 N.Y.2d 307, 308 (N.Y. 1983), *overruled on other grounds* by *Felder v. Casey*, 487 U.S. 131, 108 S. Ct. 2302 (1988) (holding that a state notice of claim provision may not be applied to bar a federal civil rights claim).

The Court finds that the instant action, a private civil rights lawsuit, has not been brought in the public interest. *See, e.g., Feldman v. Nassau County*, 349 F. Supp. 2d 528, 539 (E.D.N.Y. 2004) (finding employment discrimination claim that "seeks enforcement of [plaintiff's] private interests" is not in public interest); *Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1235 (S.D.N.Y. 2003) ("[T]he public interest exception [to the notice of claim requirement] does not apply when plaintiffs are seeking money damages for the sole purpose of redressing plaintiffs' individual injuries."); *id.* (finding that, while

plaintiffs' recovery might have an effect on others' interests, "we do not think such an effect would be of any greater value to the public than any other award to civil rights plaintiffs"); *Turner v. County of Suffolk*, 955 F. Supp. 175, 177 (E.D.N.Y. 1997). Moreover, as discussed below, this Court cannot grant plaintiff leave to serve late notice.

Accordingly, because plaintiff failed to serve a timely notice of claim, all of his state law claims are dismissed without prejudice. *See Gaffney*, 182 F. Supp. 2d 278 (dismissing NYHRL claims for failure to serve timely notice of claim). Plaintiff may return to federal court with his pendent state law claims only after he has satisfied the condition precedent required by Sections 52 and 50-e – that is, after he has filed an application to the appropriate state court for leave to file a late notice of claim, that request has been granted, and such a notice has been filed. *See Brown v. Metro. Transp. Auth.*, 717 F. Supp. 257, 261 (S.D.N.Y. 1989); *Horvath*, 423 F. Supp. 2d at 425.[6]

---

[6] The Court is aware of the provision in Section 50-e that a court "[u]pon application" of a plaintiff may, in its discretion, extend the time to serve a notice of claim. As a threshold matter, Beeks has not applied for any such extension. In any event, although the Court of Appeals has not ruled on the issue, district courts in the Second Circuit have routinely found that they lack jurisdiction to even consider such an application and the Court agrees with that analysis. *See, e.g., Henneberger*, 465 F. Supp. 2d at 200 (quoting N.Y. Gen. Mun. Law § 50-e(7), and collecting cases); *Brown*, 717 F. Supp. at 258-61 ("[U]ntil the state legislature amends [Section 50-e(7)] to include federal trial courts, [the court has] no choice but to dismiss for lack of jurisdiction plaintiff's application to file a late notice of claim or to have his notice of claim deemed timely filed.") (collecting cases). Therefore, in this case, the Court lacks jurisdiction, pursuant to Section 50-e(7), to deem plaintiff's state law claims timely filed.

V. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss Beeks's federal claims are denied pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. However, defendants' motions to dismiss plaintiff's New York State claims are granted. The parties shall proceed with discovery under the direction of Magistrate Judge Lindsay.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 21, 2008
Central Islip, NY

\* \* \*

Plaintiff is represented by Rhashaun Beeks of the Nassau County Correctional Facility, 100 Carmen Avenue, East Meadow, New York, 11554. Reilly is represented by Esther D. Miller, Esq. of the Nassau County Attorney's Office, One West Street, Mineola, New York, 11501. NHCC and Edwards are represented by Edward J. Troy, Esq. of the Law Office of Edward J. Troy, 44 Broadway, Greenlawn, New York, 11740.